UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH L.,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | CASE NO. 2:22-CV-01309-LK<br><br>ORDER AFFIRMING DECISION AND DISMISSING CASE |

Plaintiff Kenneth L. seeks review of the denial of his applications for Supplemental Security Income and Child Disability Benefits. He contends the ALJ erred by rejecting his symptom testimony and certain medical opinions of Dr. David Widlan. Dkt. No. 12 at 1. As discussed below, the Court affirms the Commissioner's final decision and dismisses this case with prejudice.

## I.  BACKGROUND

Plaintiff is 25 years old, has a limited education, and no past relevant work. Admin. Record ("AR") (Dkt. No. 10) 29. In November 2018, he applied for benefits, alleging disability as of September 1, 2004. AR 15, 76–77, 88–89, 102–03, 115–16. His applications were denied initially and on reconsideration. AR 87, 98, 114, 127. The ALJ conducted a hearing in June 2021 during

which Plaintiff amended his alleged disability onset date to April 3, 2015, and the ALJ subsequently issued a decision finding him not disabled. AR 12–73.

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520, 416.920,[1] the ALJ found as follows:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since May 1, 2018 when he became eligible to receive benefits under Title II of the Social Security Act. AR 18.
>
> **Step two:** Plaintiff has the following severe impairments: major depressive disorder, social phobia and anxiety, and attention deficit hyperactivity disorder (ADHD). *Id.*
>
> **Step three:** These impairments do not meet or equal the requirements of a listed impairment. 20 C.F.R. Part 404, Subpart P, App'x. 1. AR 19–21.
>
> **Residual Functional Capacity ("RFC"):** Plaintiff can perform a full range of work at all exertional levels with nonexertional limitations. He can complete simple, routine, and repetitive tasks in a low stress job that does not require more than occasional interaction with coworkers or the general public. AR 21–29.
>
> **Step four:** Plaintiff has no past relevant work. AR 29.
>
> **Step five:** Because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled. AR 30–31.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1–6.

## II.    DISCUSSION

The Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir.

---

[1] "The recent changes to the Social Security regulations did not affect the familiar five-step sequential evaluation process." *Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (cleaned up).

ORDER AFFIRMING DECISION AND DISMISSING CASE - 2

2014) (cleaned up). Thus, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (cleaned up). The ALJ is nonetheless responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This means that the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987). When the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. *Ford*, 950 F.3d at 1154. And last, the Court will not reverse an ALJ's decision on account of harmless error, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (cleaned up).

**A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony Regarding Social Anxiety**

Plaintiff contends the ALJ erred in rejecting his symptom testimony regarding his severe social anxiety. Dkt. No. 12 at 2–5. Plaintiff testified that he is unable to work due to ADHD, anxiety, and depression. AR 45–46, 258, 301. As to his social anxiety, he stated that he cannot be around more than one person at a time, that his anxiety prevents him from being able to complete even simple tasks, that it is difficult for him to leave the house because it is hard for him to be around others, and that his anxiety attacks last for hours and that he has to go into his room in order to calm down. AR 46, 54, 57, 58, 62, 65–66.

Where, as here, an ALJ determines that a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, *see* AR 18, 22, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's

testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (cleaned up). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ rejected Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms because they were "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 22. With respect to ADHD, and to the extent ADHD impacts Plaintiff's social anxiety symptoms, the ALJ observed that although Plaintiff's ADHD "has reasonably limited him to work" with "simple, routine, and repetitive tasks; in a low stress job, defined as having no fixed production quotas, no hazardous conditions and only occasional decision making required and only occasional changes in the work setting," his treatment "has not been optimal." *Id.* Plaintiff stopped taking medication for ADHD after taking it in elementary and middle school, despite the fact that his mother and teachers felt that the medication was helpful. AR 24;[2] *see also* AR 55 ("I've tried to fix this without medication, and the medication seems kind of scary, so I've always had [medical providers] ask if I wanted to go down that route, but it just seems like a route that I didn't want to try."). In a January 2019 visit with Dr. Brian Pham, Plaintiff was able to spell "world" backwards and recall three out of three items immediately and after five minutes. AR 24. As of January 2019, Plaintiff had expressed interest in resuming ADHD medication for school, but he had not done so. *Id.*; *see also* AR 514. At that time, he reported receiving counseling at Valley Cities Counseling every other week. AR 24. In a May 2021 report, Dr. David Widlan, PhD, noted that Plaintiff was able to make goal-directed statements and follow the interview. *Id.*; *see also* AR 631. Although Plaintiff could not remember any objects after a five-

---

[2] As the Commissioner notes, AR 23 and 24 are out of order. Dkt. No. 15 at 3 n.2.

ORDER AFFIRMING DECISION AND DISMISSING CASE - 4

minute lapse, made mistakes on the serial 3s counting task, and was unable to attempt a serial 7 exercise, he was able to remember six digits forward and four digits backward in the normal range, name the president and governor, name the states that border Washington, and spell "world" forward and backward. AR 24, 632. Dr. Widlan opined that Plaintiff "could cognitively understand simple instruction though more complex tasks would be too challenging for him," which the ALJ found to be persuasive. AR 28; *see also* AR 633. Although Dr. Widlan also opined that Plaintiff did "not appear to be able to persist at an adequate pace" and would be "easily overwhelmed by task demands," AR 633, the ALJ did not find that opinion to be persuasive, as "claimant reported being able to carry out many household chores, and he reported that he was able to handle funds," AR 28; *see also* AR 284–85, and "Dr. [Dana] Harmon[, Ph.D] indicated in her November 15, 2018 assessment that the claimant's concentration was basically intact, as he did well on Trials and an MSE," AR 29; *see also* AR 429–31. The ALJ likewise did not find Dr. Widlan's opinion that "claimant would likely struggle to negotiate simple stressors on a routine basis" persuasive, AR 29, reasoning that this was "inconsistent with [Plaintiff's] ability to attend counseling sessions by telephone on a regular basis and set objectives at each such session," as well as Dr. Widlan's observation that "claimant was able to make goal-directed statements and follow the interview." AR 29 (citing Exs. 6F, 7F, 11F); *see also* AR 631. The ALJ thus concluded that Plaintiff's medical records did not show that his ADHD persisted at a level of severity that would reasonably preclude work within the RFC the ALJ provided. AR 24.

As for Plaintiff's depression, anxiety, and social phobia, the ALJ noted the following chronology: on November 15, 2018, Dr. Harmon diagnosed Plaintiff with persistent depressive disorder, evidenced by depressed mood, discouragement, social withdrawal, weight gain, sleep disturbance, and difficulties with social functioning. AR 23. In January 2019, Dr. Pham noted that

Plaintiff presented with secondary difficulties of depressive symptoms and social anxiety. *Id.* In August 2019, Dr. Jeannine Le noted that Plaintiff had an appropriate mood and affect and a normal psychiatric examination. *Id.* In April 2020, Sheila Holt, MA-MHP, AAC, noted that Plaintiff recognized current anxiety-reducing skills and was learning new ones. *Id.*; *see also* AR 580 (noting that coping skills were from the Trauma Stewardship Institute Tiny Survival Guide). And although Dr. Widlan diagnosed Plaintiff with "recurrent, severe, and social phobia" in May 2021, AR 23, the ALJ noted that Plaintiff's medical records and testimony showed that he received counseling sessions every other week, and in July 2020, Plaintiff "teamed up" with Sheila Holt of Valley Cities Behavioral Health Care to "get additional information concerning the Green River GED/ABE program online," AR 25; *see also* AR 586–87, 589–90 ("Goal: work toward decision to study for GED or job"). Although Plaintiff had not yet enrolled by December 2020, Holt noted "that COVID-19 was a significant barrier to the claimant's primary goal of participating in a GED program," and an online program "might help him" with his social phobia. AR 25. In January 2021, Holt stated that she helped Plaintiff "identify growth and strengths, and worked on skills to promote processing and managing COVID 19 stresses." *Id.*; *see also* AR 607. In February 2021, Michael Lunde, BS, AAC, noted that Plaintiff reported that he would continue to use his skills. AR 25; *see also* AR 611. The next month, Plaintiff reported to Lunde that "not feeling safe was a barrier to returning to face-to-face schooling to complete a GED," but Lunde reported that "claimant's mood was okay." AR 25; *see also* AR 612–13. In April 2021, Lunde discussed Plaintiff's fear of engagement, negative self-talk, and procrastination, and noted that Plaintiff "did not report thoughts of self-harm and was future-oriented." AR 23; *see also* AR 625–28.

        The ALJ also considered a February 2019 third-party function report submitted by Plaintiff's mother, and observed that "[t]he activities described in that report, including the

claimant's being able to carry out personal grooming, cook with supervision, shop with his mother, ride a bicycle, count change, and handle a savings account (but not pay bills or use a checkbook) are consistent with his medical records[.]" AR 26. In addition, the ALJ considered—but did not defer to or give any specific evidentiary weight to—the "somewhat persuasive" May 2019 opinion of John Wolfe, PhD, in which he opined—consistent with Plaintiff's medical records—that "claimant had mild limitation in the area of understanding, remembering, or applying information, and moderate limitation in the areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself." AR 26–27. Dr. Wolfe also opined that Plaintiff "could interact with the general public in brief, incidental contacts" and "could sustain customer contact if limited to a computer, and work in the vicinity of coworkers and manage simple social cooperation with known coworkers and a supervisor," which the ALJ found to be "consistent with" Dr. Harmon's findings in her November 15, 2018 report. AR 27; *see also* AR 108–113, 121–126. Dr. Harmon's findings included that "claimant had moderate limitation in communicating and performing effectively, completing a normal workweek without interruptions from psychologically based symptoms, and setting realistic goals and planning independently," and Plaintiff had "moderate and chronic social withdrawal, moderate and chronic pain/fatigue, and mild and chronic difficulties with social functioning." AR 27, 428–29; *see also* AR 430 ("Kenneth does not seem appropriate for the ABD program or SSI/SSDI facilitation. He should be able to connect to sustained, gainful employment within six to twelve months, with DVR services and medication treatment."). Noting that he found Dr. Harmon's assessment to be "somewhat persuasive," the ALJ reiterated that he found "that the claimant has moderate limitation in the area of interacting with others." AR 27. The ALJ therefore concluded that Plaintiff did not have "any mental health impairment, that either alone, or in combination with any other impairment, persisted

ORDER AFFIRMING DECISION AND DISMISSING CASE - 7

at a level of severity that would reasonably preclude work within the residual functional capacity adopted above." AR 25.

These are specific, clear, and convincing reasons for rejecting Plaintiff's testimony concerning regarding the intensity, persistence and limiting effects of his social anxiety. These reasons are supported by substantial evidence. Numerous opinions cited by the ALJ, as discussed above, noted that Plaintiff can complete simple tasks. And as the ALJ observed, Plaintiff's social phobia did not prevent him from regularly attending in-person counseling sessions or starting to pursue a goal of attending a GED program. Although Holt recommended an online GED program to "help" with his social phobia, Plaintiff was considering an in-person program as well: Holt noted that COVID-19 was a "significant barrier" to Plaintiff's "primary goal of participating in a GED program," and Lunde similarly observed that "not feeling safe was a barrier to returning to face-to-face schooling to complete a GED." AR 25, 602, 612; *see also* AR 64. Further support for the ALJ's rejection of Plaintiff's symptom testimony is found in Dr. Wolfe's opinion that he "could interact with the general public in brief, incidental contacts" and "could sustain customer contact if limited to a computer, and work in the vicinity of coworkers and manage simple social cooperation with known coworkers and a supervisor," AR 27, 109, 112, 122, 125, and in Dr. Harmon's findings, AR 27, 428–30. The record as a whole supports the ALJ's RFC limiting Plaintiff to a job that "does not require more than occasional interaction with coworkers or the general public." Accordingly, the Court finds that the ALJ did not err.

**B.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

As noted above, Plaintiff contends the ALJ erred in rejecting certain medical opinions of Dr. Widlan. Dkt. No. 12 at 5. Dr. Widlan completed a psychological evaluation for Plaintiff in May 2021. AR 630–33. The ALJ found his opinion partially persuasive. AR 28–29.

For claims like Plaintiff's that were filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). However, the ALJ's decision—including the decision to discredit any medical opinion—still must be supported by substantial evidence. *Woods*, 32 F.4th at 787. ALJs must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions" by considering their supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The ALJ is specifically required to consider the two most important factors, supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor involves consideration of how consistent a medical opinion is with the other record evidence. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, ALJs "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Again, the ALJ found unpersuasive Dr. Widlan's opinion that Plaintiff "did not appear to be able to persist at an adequate pace and would be easily overwhelmed by task demands," reasoning that "claimant reported being able to carry out many household chores, and he reported that he was able to handle funds," and "Dr. Harmon indicated in her November 15, 2018 assessment that the claimant's concentration was basically intact, as he did well on Trials and an MSE." AR 28–29. The ALJ permissibly rejected Dr. Widlan's finding that Plaintiff is not able to persist at an adequate pace because it was inconsistent with the examination and findings of Dr.

Harmon in 2018. AR 29, 427–31 (Dr. Harmon), 633 (Dr. Widlan). The exam showed that Plaintiff's concentration was within normal limits and described his functioning as "basically intact." AR 431. The inconsistency between these examinations is a valid reason to reject this portion of Dr. Widlan's opinion.[3]

The ALJ also did not find Dr. Widlan's opinion that "claimant would likely struggle to negotiate simple stressors on a routine basis" persuasive. AR 29. The ALJ reasoned that this opinion was "inconsistent with [claimant's] ability to attend counseling sessions by telephone on a regular basis and set objectives at each such session," as well as Dr. Widlan's own observation that "claimant was able to make goal-directed statements and follow the interview." *Id*. Although the ALJ's reasoning could have been clearer, any error the ALJ may have made is harmless because "the agency's path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted). The ALJ found Dr. Widlan's observations insufficient to support the limitations he identified, concluded that the record did not corroborate Plaintiff's allegations of significant limitations with stressors or interacting with people, and relied on medical opinions which opined that Plaintiff could be subjected to stressors such as limited contact with the public, supervisors, and coworkers. AR 27 (citing Dr. Wolfe's and Dr. Harmon's findings, AR 109, 112, 122, 125, 428–30); *see also*

---

[3] To the extent there was any error, it is harmless in light of substantial evidence in the record supporting the ALJ's rejection of this opinion. For example, medical opinions attributed Plaintiff's deficits in focusing on tasks to his ADHD, and the ALJ accurately noted that his treatment for ADHD "has not been optimal" given that he has chosen not to take medication that his providers have recommended. AR 22, 24, 55; *see also* AR 80 (Plaintiff "has normal capacity to learn and recall tasks, including some complex tasks," but "ADHD causes problems with focusing on task at hand and affects his ability to concentrate on written or verbal instructions"; "[h]e was referred to PCP for medical clearance to start ADHD medications" but "apparently hasn't followed up with medical clearance needed to start ADHD meds as PCP MER was received 02/02/19 and there is only one OV from 11/2018."); AR 476. Dr. Harmon opined that Plaintiff "should be able to connect to sustained, gainful employment within six to twelve months, with D[ivision of] V[ocational] R[ehabilitation] services and medication treatment." AR 430. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

*Danette G. v. Comm'r of Soc. Sec.*, No. 23-6056-MLP, 2024 WL 2922803, at *4 (W.D. Wash. June 10, 2024). The Court may rely upon information cited by medical sources whose findings "the ALJ clearly credited." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). Substantial evidence supports the ALJ's decision.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 30th day of September, 2024.

Lauren King
United States District Judge

ORDER AFFIRMING DECISION AND DISMISSING CASE - 11